ALLAN S. BLOOM (AB-4125)
EMILY J. RATTÉ (admitted *pro hac vice*)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DUANE PENISTER,

           Plaintiff,

- against -

INTERNATIONAL BUSINESS MACHINES CORPORATION and BILL MAWHINNEY,

           Defendant.

06 CV 4188 (BSJ) (MHD)

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
(L. Civ. R. 56.1)

---

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, Defendants, International Business Machines Corporation ("IBM") and Bill Mawhinney, respectfully submit this statement of undisputed material facts in support of their motion for summary judgment.[1]

**Plaintiff's Poor Performance In BCRS**

1.     IBM hired Plaintiff in 1997 as an IT Specialist. **Pl. Dep. 47:5-6; 22:9-11.**[2]

---

[1] The facts set forth herein are offered as true and undisputed solely for purposes of Defendants' motion.

[2] "Pl. Dep." refers to the transcript of the deposition of Plaintiff Duane Penister, taken February 21, 2007, excerpts from which are attached as Exhibit A to the Affirmation of Allan S. Bloom ("Bloom Affirmation"), dated May 24, 2007 and filed herewith.

-2-

2. In 2002, Plaintiff transferred to a position as a Project Manager in IBM's Business Continuity and Resiliency Services ("BCRS") division in Sterling Forest, New York. **Pl. Dep. 22:9-11, 47:17-19.**

3. At IBM Plaintiff received written performance assessments entitled Personal Business Commitments ("PBC"). **Pl. Dep. 59:20-60:3.**

4. For 2002, Plaintiff received two PBCs—one from Robbie Jones, the manager to whom Plaintiff reported before he transferred to BCRS, and one from Thomas Flood, the manager to whom Plaintiff reported when he first joined BCRS. **Pl. Dep. 72:8-14; 73:21-74:3; Bloom Aff. Exhs. D, E.**

5. Both Jones and Flood rated Plaintiff a "3" for his performance in 2002, corresponding to "achieved some/most commitments." **Bloom Aff. Exs. D, E.**

6. Flood rated Plaintiff a "3" for his performance in 2003, corresponding to "achieved some/most commitments." **Pl. Dep. 80:12-21; Bloom Aff. Ex. F.**

7. In 2004, IBM instructed managers to place all employees with three consecutive PBC ratings of "3" on performance improvement plans. **Pl. Dep. 111:6-23; Mawhinney Dep. 67:12-24; 70:1-12.**[3]

8. Bill Mawhinney placed Plaintiff on a performance improvement plan in the spring of 2004. **Pl. Dep. 111:6-23.**

---

[3] "Mawhinney Dep." refers to the transcript of the deposition of Bill Mawhinney, taken April 26, 2007, excerpts from which are attached as Exhibit C to the Bloom Affirmation.

9. When IBM places employees on performance improvement plans, the employee can choose to attempt to improve his or her performance or resign with a severance package. **Thompson Dep. 106:10-109:8.** [4]

10. IBM employees have avenues available to them to report any complaints—including complaints of discrimination or harassment, or disagreement with a management decision such as a performance rating. **Pl. Dep. 104:9-16; 207:24-208:6.**

11. The "Open Door" process, under which IBM assigns an investigator to investigate an employee's allegations, is one avenue of complaint available to IBM employees. **Pl. Dep. 104:9-16; Thompson Dep. 56:12-57:13.**

12. Panel review, under which a panel of IBM employees—comprised of both management and non-management personnel—is appointed to hear an employee's complaint and IBM's response thereto, is another avenue open to IBM employees seeking review of a management decision such as a performance rating. **Pl. Dep. 207:24-208:6.**

13. After being placed on a performance improvement plan in spring 2004, Plaintiff initiated an internal "Open Door" complaint objecting to the plan, arguing that one of his "3" ratings from 2002 should not count because each was based on only a half year of performance. **Pl. Dep. 126:22-25.**

14. Plaintiff's then-third line manager, David Daniel, agreed with Plaintiff and instructed Mawhinney to rescind the formal performance improvement plan. **Pl. Dep. 115:11-15; 158:2-159:3; Mawhinney Dep. 73:19-74:9.**

15. Mawhinney rated Plaintiff a "2," corresponding to "solid contributor," for Plaintiff's performance in 2004. **Pl. Dep. 159:6-11; Mawhinney Dep. 40:11-13.**

---

[4] "Thompson Dep." refers to the transcript of the deposition of Plaintiff's third line manager (from January 1, 2004 through his resignation), Ron Thompson, taken April 20, 2007, excerpts
(continued...)

16. Between January and July 2005, four IBM customers requested that Plaintiff be removed from their accounts. **Pl. Dep. 216:12-217:15; Mawhinney Dep. 45:5-24.**

17. In July 2005, Mawhinney told Plaintiff that he was performing at a "3" level and needed to improve. **Pl. Dep. 168:1-10; 169:16-25.**

18. Following his July 2005 meeting with Mawhinney, Plaintiff requested a transfer to another first line manager. **Pl. Dep. 168:11-14.**

19. In 2005, Thompson assigned Plaintiff to report to Leo Ladaga. **Pl. Dep. 169:10-1; Thompson Dep. 102:11-22.**

20. Ladaga rated Plaintiff a "3" for his performance in 2005, corresponding to "among the lowest contributors this year; needs improvement." **Bloom Aff. Ex. I.**

21. Ladaga placed Plaintiff on a performance improvement plan in the spring of 2006. **Pl. Dep. 188:3-9.**

22. In 2006, Plaintiff initiated an internal complaint and requested a panel review of both his 2005 PBC rating and Ladaga's decision to place him on a performance improvement plan. **Pl. Dep. 210:5-9.**

23. The panel upheld both the PBC rating and the performance improvement plan. **Pl. Dep. 213:15-21.**

24. Upon Plaintiff's successful completion of the performance improvement plan in 2006, Ladaga determined that Plaintiff's performance had improved to the level of a solid contributor, or a "2" rating. **Pl. Dep. 223:14-224:9.**

---

(...continued)
from which are attached as Exhibit B to the Bloom Affirmation.

**Plaintiff's IBM Project Manager Certification**

25. In October 2004, Plaintiff asked Mawhinney to approve his Project Manager Certification application. **Mawhinney Dep. 59:20-60:20.**

26. In January 2005, Mawhinney approved Plaintiff's completed application and submitted it to the IBM Project Manager Certification Board. **Mawhinney Dep. 59:20-60:20.**

27. The Board certified Plaintiff as a Project Manager in March 2005. **Pl. Dep. 294:13-17.**

28. Plaintiff testified that he did not request a promotion upon becoming certified as a Project Manager. **Pl. Dep. 295:8-10.**

**A Co-Worker With Whom Plaintiff Had An Affair Accuses Him Of Sexual Harassment**

29. From March until August 2004, Plaintiff engaged in an extramarital affair with a female co-worker. **Pl. Dep. 249:2-23.**

30. In December 2004, the woman complained to Mawhinney that Plaintiff had sexually harassed her. **Mawhinney Dep. 84:16-85:1.**

31. Mawhinney met with Plaintiff to investigate the woman's allegations. **Pl. Dep. 259:21-24.**

32. Plaintiff admitted to Mawhinney that he had engaged in an extramarital affair with the woman in 2004. **Pl. Dep. 250:3-6.**

33. A letter dated January 14, 2005, warning Plaintiff that his behavior violated IBM's sexual harassment policies, and that if he engaged in similar behavior again he would be terminated, was placed in Plaintiff's personnel file. **Pl. Dep. 258:2-4; Bloom Aff. Exh. H.**

34. Plaintiff complained to his then-third line manager, Ron Thompson, that he felt he was being treated unfairly with respect to the sexual harassment investigation. **Thompson Dep. 81:1-8.**

35. Plaintiff told Thompson that he had evidence that his sexual relationship with the woman was consensual. **Thompson Dep. 97:12-98:6.**

36. Thompson agreed to take a look into the woman's allegations. **Thompson Dep. 81:12-82:2; 92:22-93:8.**

37. Lynea St. Pier, an IBM Human Resources Partner, conducted an investigation into the woman's allegations. **Thompson Dep. 95:8-18.**

38. Thompson concluded that both Plaintiff and the woman had acted inappropriately and that neither should receive a letter, but that both should be counseled by their managers. **Thompson Dep. 98:7-99:1.**

39. The January 14, 2005 letter was removed from Plaintiff's personnel file in April 2005. **Pl. Dep. 259:10-20; Mawhinney Dep. 127:13-22; 132:5-6.**

### Plaintiff Never Files An Internal Complaint About Discrimination, Harassment, Or Retaliation

40. During his employment with IBM, Plaintiff was aware of IBM's anti-discrimination and anti-harassment policies. **Pl. Dep. 103:12-105:20.**

41. During his employment with IBM, Plaintiff was aware that he could raise a complaint of discrimination or harassment with human resources or his managers. **Pl. Dep. 103:12-105:20.**

42. Plaintiff never complained to anyone at IBM alleging discrimination or harassment based on his race or color. **Pl. Dep. 156:15-22; 229:20-230:5 ("Q. When did you complain about discrimination? A. I didn't complain about discrimination. I complained about unfair treatment. Q. Okay. Did you ever complain internally about discrimination? A. No. Q. Did you ever use the word "discrimination" in any conversation with anyone at IBM? A. I try not to.").**

43. When Plaintiff initiated internal complaints regarding his performance improvement plans, he did not complain that he was being placed on them because of his race or color; instead, he simply complained that they were "unfair." **Pl. Dep. 229:22-23 ("I didn't complain about discrimination. I complained about unfair treatment.").**

44. Flood never made any comments to Plaintiff that Plaintiff found offensive based on his race or color. **Pl. Dep. 95:9-12 ("Q. Did [Flood] ever make any comments to you that you thought were offensive based on your race or color? A. Not to me directly.").**

45. Mawhinney never made any comments to Plaintiff that Plaintiff found offensive based on his race or color. **Pl. Dep. 172:5-12 ("Q. Did Bill Mawhinney ever make any comments to you that you found offensive based on your race? A. Not directly. . . . Q. Did he ever make any comments directly to you that you found offensive based on your color? A. No[.]").**

46. Plaintiff never complained to his therapist that he was being treated unfairly at work based on his race or color. **Waldbaum Dep. 61:17-62:8 ("Did he tell you that he felt he was being treated unfairly based on his race? A. No. Q. Did he tell you he thought he was being treated unfairly based on the color of his skin? A. No.").**

47. Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission on one occasion, on or about January 25, 2006. **Pl. Dep. 267:20-22.**

### Plaintiff Voluntarily Resigns From IBM

48. Plaintiff began searching for employment outside IBM in October 2006. **Pl. Dep. 25:12-23.**

49. After two rounds of interviews, Plaintiff received a job offer from Carat International as a Project Manager. **Pl. Dep. 34:2-38:22.**

50.     Carat offered Plaintiff $95,000 as a starting salary and proposed a start date in October 2006. **Pl. Dep. 38:23-39:1, 39:5-10, 50:12-14.**

51.     At the time of the Carat offer, Plaintiff's salary at IBM was $86,000. **Pl. Dep. 50:12-14.**

52.     Plaintiff accepted Carat's offer of employment, and on October 20, 2006, voluntarily resigned from IBM, giving two weeks' notice. **Pl. Dep. 24:13-25:6, 55:15-20.**

53.     Plaintiff began employment at Carat in November 2006. **Pl. Dep. 42:8-43:3.**

Dated: New York, New York
       May 24, 2007

                                        Respectfully submitted,

                                        PAUL, HASTINGS, JANOFSKY & WALKER LLP

                                        By: _____
                                            Allan S. Bloom (AB-4125)
                                            Emily J. Ratté (admitted *pro hac vice*)
                                        75 East 55th Street
                                        New York, New York 10022
                                        (212) 318-6000

                                        *Attorneys for Defendants*

LEGAL_US_E # 75203354.7

ALLAN S. BLOOM (AB-4125)
EMILY J. RATTÉ (admitted *pro hac vice*)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUANE PENISTER, <br><br> Plaintiff, <br><br> - against - <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION and BILL MAWHINNEY, <br><br> Defendants. | 06 CV 4188 (BSJ) (MHD) <br><br> **CERTIFICATE OF SERVICE** |

      The undersigned, admitted *pro hac vice* to this Court, hereby certifies that on **May 25, 2007**, she caused to be served a true and correct copy of the attached **Statement of Undisputed Material Facts In Support of Defendants' Motion for Summary Judgment (56.1)**, on the following counsel via overnight mail:

           **Roberto Campos-Marquetti, Esq.**
           **CAMPOS-MARQUETTI AND PAGAN. PLLC**
           **67 Wall Street, Suite 2211**
           **New York, New York 10005**

Dated: New York, New York
       May 25, 2007

                                          EMILY J. RATTÉ

75264685.1